## AFFIDAVIT OF SPECIAL AGENT ANTHONY J. VENTETUOLO

I, Anthony J. Ventetuolo, having been duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I have been a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") since May 2015, and am presently assigned to the Worcester Satellite Office of the Springfield Field Office.  I am currently assigned to the Springfield Area Firearms Enforcement Task Force.  My responsibilities are to investigate and prevent offenses involving the unlawful use, manufacture, and possession of firearms and explosives.  I attended and successfully completed the Department of Homeland Security Criminal Investigator Training Program and ATF Special Agent Basic Training at the Federal Law Enforcement Training Center in Brunswick, Georgia.  In August 2018, I attended and completed ATF Firearms Interstate Nexus Training at the ATF National Center for Explosives Training and Research in Huntsville, Alabama.

2.      I was previously employed by the United States Army Special Operations Command as a Training Instructor in direct support of a Special Operations military unit and completed three overseas deployments in support of the Global War on Terror.  I served as a Police Officer with the City of Virginia Beach, Virginia Police Department from 2002 until 2012.  I earned Bachelor of Science degrees in political science and public administration from James Madison University and earned a Master's degree in criminal justice from Troy University.

3.      While employed as a Police Officer and Special Agent, I have: investigated violations of local, state and federal criminal statutes; made arrests, prepared search and arrest warrant affidavits; interviewed defendants, witnesses and informants; and seized currency, firearms, narcotics and other evidence related to criminal investigations.  I have experience and training in firearms and narcotics trafficking cases, gang investigations and the utilization of

informants and cooperating witnesses to investigate firearms and narcotics trafficking and other organized criminal activity.

4.     I have received training in analysis of call detail and other records from electronic communication facilities commonly used by individuals engaged in criminal activity to communicate about their illegal enterprises.   I have used information obtained from communication facilities, including service provider records and GPS location information, to investigate criminal conspiracies involving firearms and narcotics offenses.  I am familiar with the "street" language used by firearm and/or drug traffickers via electronic communication facilities, as well as the methods they use to disguise conversation and operations.

**PURPOSE OF AFFIDAVIT**

5.     This affidavit is submitted in support of an application for a criminal complaint and arrest warrant charging Juan E. RODRIGUEZ a/k/a "Mula" (born 1990), Antoine MACK (born 1982), █████████████, Angel CORDOVA a/k/a "Cano" (born 1984) and ████ █████████████████ with conspiracy to possess with intent to distribute and to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 846 (the "Subject Offense"). Based on the facts presented in this affidavit, there is probable cause to believe that RODRIGUEZ, MACK, █████, CORDOVA and ███████████ conspired with each other, with Junior MELENDEZ (born 1980), and with others to commit the Subject Offense.

6.     This affidavit is further submitted in support of a complaint also charging MACK for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

7.     The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents and witnesses. This affidavit includes only those facts I believe are necessary to establish probable cause for the

issuance of the requested complaint and arrest warrant and does not include all of the facts
uncovered during the investigation.

## RELEVANT STATUTES

8.      Title 21, United States Code, Section 846 makes it unlawful for any person to
conspire with another to possess with the intent to distribute, or to distribute, a controlled
substance.  Title 21, United States Code, Section 812 identifies cocaine as a controlled substance.

9.      Title 18 U.S.C. § 922(g)(1) provides, in relevant part, that "[i]t shall be unlawful
for any person -- who has been convicted in any court of a crime punishable by imprisonment for
a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess
in or affecting commerce, any firearm or ammunition, or to receive any firearm or ammunition
which has been shipped or transported in interstate or foreign commerce."

10.      Title 18, United States Code, Section 921 defines firearm as any weapon
(including a starter gun) which will or is designed to or may readily be converted to expel a
projectile by the action of an explosive, or "the frame or receiver of any such weapon."

## PROBABLE CAUSE

A.      <u>Investigation of Melendez and Associates</u>

11.      Since July 2018, members of the Worcester Police Department ("WPD") and
ATF have investigated alleged violations of federal firearms and narcotics laws by MELENDEZ
and his associates for the trafficking and distribution of firearms and controlled substances,
namely cocaine and crack cocaine, in Massachusetts, New Hampshire and Rhode Island.  The
investigation confirmed that MELENDEZ is the leader of the Massachusetts chapter of the
Almighty Vice Lords street gang.  WPD detectives are familiar with MELENDEZ through
investigations dating as far back as 1997, when MELENDEZ and others became the focus of a

drug trafficking investigation conducted by the Drug Enforcement Administration ("DEA"). MELENDEZ was convicted of drug and firearms violations and sentenced to 109 months in prison as a result.

12.     Agents[1] determined that MELENDEZ was using a Sprint cell phone assigned call number (774) 535-1317 (the "MELENDEZ Phone). On March 13, 2019, the United States District Court authorized the interception of wire and electronic communications involving the MELENDEZ Phone.  See Case No. 19-mc-94009-TSH.  The District Court extended that authorization for additional thirty-day periods on April 12, 2019 and May 10, 2019.

13.     Agents also determined that RODRIGUEZ was using an AT&T cell phone assigned call number 774-262-0485 (the "RODRIGUEZ Phone").  On May 10, 2019, the District Court authorized the interception of wire and electronic communications involving the RODRIGUEZ Phone.  See Case No. 19-mc-94018-TSH.

B.     Facts Establishing Probable Cause for Drug Conspiracy

14.     The investigation further revealed that MELENDEZ has conspired with several individuals – including RODRIGUEZ, MACK, ███, CORDOVA, and ████████ – to possess with intent to distribute and to distribute powder cocaine and cocaine base.  Specifically, the investigation has revealed that MELENDEZ and RODRIGUEZ conspired to (a) acquire significant quantities of powder cocaine, including the acquisition of cocaine from CORDOVA, (b) convert a portion of that powder cocaine into crack cocaine, and (c) store and distribute powder and crack cocaine from 69 Cutler Street and other locations to various individuals, including ████████.  MELENDEZ and RODRIGUEZ have utilized MACK and ███ to

---

[1] Unless otherwise noted, the term "agents" is intended to refer to ATF / DEA special agents, ATF task force officers, Worcester Police detectives and other law enforcement officers participating in this investigation.

assist in the acquisition and distribution of the cocaine.  Evidence of this conspiracy includes the following interceptions and activity.

15.     On March 14, 2019, at approximately 2:47 pm, MELENDEZ placed a call to RODRIGUEZ.  After discussing some work that RODRIGUEZ was doing on one property, RODRIGUEZ informed MELENDEZ that "I got almost the whole thing too, bro."  MELENDEZ asked "They gave you almost the whole thing?" RODRIGUEZ answered "Yeah."  MELENDEZ responded, "Okay, good. ████ will be through tomorrow and, yea, everything will be..." RODRIGUEZ then told MELENDEZ that "I'm tryin get this shit quick [U/I]."  MELENDEZ then stated "Imma call you on a different one."  Based on my training and experience and the investigation to date, I believe that RODRIGUEZ was telling him that he had gotten a significant quantity of cocaine ("I got almost the whole thing"), and that MELENDEZ was pleased because ████████████████ would be in Worcester the following day to purchase cocaine.[2] RODRIGUEZ's statement that he was "tryin get this shit quick" likely was a reference to his intent either to convert the powder cocaine into crack cocaine, or to earn money quickly by immediately distributing the cocaine.  At that point, MELENDEZ indicated that he would call RODRIGUEZ from a different phone.

16.     On March 24, 2019, at approximately 7:40 pm, RODRIGUEZ called MELENDEZ.  During the ensuing conversation, MELENDEZ asked RODRIGUEZ "did you do

---

[2]  I believe that MELENDEZ and RODRIGUEZ were discussing cocaine because information developed during the investigation indicated that MELENDEZ was engaged in the distribution of cocaine, two individuals (Lujan BURGOS and Tyrone WALKER) stopped by investigators after separately meeting with MELENDEZ in April 2019 were found to be in possession of crack cocaine and charged in state court with possession with intent to distribute cocaine cocaine, and, as described below, the quantity and description of the substance that MELENDEZ purchased from CORDOVA on May 17, 2019 ("531 in one piece"), and the fact that ████████████████ was stopped by law enforcement on May 25, 2019 after meeting with MELENDEZ and was found to be in possession of approximately 200 grams of powder cocaine and approximately 115 grams of cocaine base.

any up?"  RODRIGUEZ responded, "Nah, I haven't even touch it.  I'm about to head out now."

MELENDEZ asked "can you do one up?"  RODRIGUEZ responded "Yup."  Approximately one

hour later, at about 8:45 pm, RODRIGUEZ called MELENDEZ on the MELENDEZ Phone.

During that intercepted call, RODRIGUEZ informed MELENDEZ that the "shit was still damp,"

and that this "batch was better than the last."  Based on my training and experience, as well as

this investigation to date, I believe MELENDEZ and RODRIGUEZ were discussing the cooking

of powder cocaine into crack cocaine, and the required drying involved in that process.

> April 2, 2019 Arrest of Lujan BURGOS

17.     On April 2, 2019, agents monitoring a pole camera mounted in the area of

MELENDEZ's residence at 26 Malvern Road observed Lujan BURGOS (born 1992) (a/k/a

"Slim," a/k/a "Jordan") and MELENDEZ meet outside the residence and then enter the residence

together.  Worcester police stopped BURGOS after he left 26 Malvern Road for operating with a

suspended license.  During that stop, Worcester police found BURGOS in possession of

approximately 23 grams of suspected crack cocaine.

18.     The following day, April 3, 2019, at approximately 2:27 pm, RODRIGUEZ called

MELENDEZ.  During that call, the following exchange ensued:

| | |
|---|---|
| RODRIGUEZ: | I'm hollering for some other shit, this nigga Jordan (BURGOS) got bagged, I got, I got seven right now but his is ten, wanted to see if you want to throw the last couple? |
| MELENDEZ: | Let me uh... well, you already know, I just did everything with everything right there. So got to allow me to make some moves. |
| RODRIGUEZ: | I know I'm hip I can't I'm not even if he wasn't one of my closest dudes I wouldn't even do it, cause you already knows you trying to invest into that other thing. |
| MELENDEZ: | We'll do it tomorrow, we'll get him out tomorrow. |

Based on my training and experience, and the investigation to date, I believe that RODRIGUEZ

was informing MELENDEZ that BURGOS had been arrested and bail was set at $10,000.

RODRIGUEZ informed MELENDEZ that he had $7,000 but needed an additional $3,000 from

MELENDEZ in order to post BURGOS' bail.  MELENDEZ informed RODRIGUEZ that he did

not have the $3,000 but would obtain those funds after he was able to make additional drug sales

(i.e. "got to allow me to make some moves").

     April 3, 2019 Distribution by MELENDEZ and MACK to ███████████

     19.     On April 3, 2019, at approximately 1:03 pm, MACK called MELENDEZ.  During

that call, MELENDEZ asked MACK if he wanted to earn money by doing a ██████████

████████ thing."  MACK agreed.  MELENDEZ asked MACK "How long are you gonna be

so I just, so I just see if he'll ████████, if he'll still be around."  MACK inquired, "I mean,

where am I going to where I usually go?"  When MELENDEZ responded yes, MACK stated that

he could "be in the winds in an hour, tops."   MELENDEZ then confirmed that MACK could be

"out here before 3, to him█████████about 4?"  MACK affirmed.

     20.     Based on that call, as well several text messages exchanged between

MELENDEZ and MACK, agents conducted surveillance at RODRIGUEZ's residence at 69

Cutler Street, a location MELENDEZ frequently used for drug activity.  At approximately 3:25

pm, a surveillance officer observed the black Mercedes sedan used by MELENDEZ parked in

the driveway at 69 Cutler Street.  At approximately 3:31 pm, a surveillance officer observed the

blue Hyundai Tucson used by MACK arrive at 69 Cutler Street.  A male exited the Hyundai and

entered 69 Cutler Street.  Approximately 20 minutes later, the same male exited 69 Cutler Street,

re-entered the Hyundai, and drove from the area.  Agents followed the vehicle as it drove to New

Hampshire.

     21.     Agents conducting surveillance at ████████ residence at ████████████



████████ Manchester, New Hampshire, later observed the blue Hyundai parked in the driveway. At approximately 5:07 pm, MELENDEZ called MACK and advised MACK that "he" (presumably ████████) was at the grocery store and would be there in 10 minutes. MACK expressed concern about waiting in the driveway. MELENDEZ told MACK to leave "that" in the "whip" (i.e. car) and take a walk. At approximately 5:22 pm, MACK called MELENDEZ and asked "what's the word?" MELENDEZ told MACK that "he should be there," and indicated that he would call ████████ from his "other number." While still on the phone with MACK, MELENDEZ could be heard using a different phone to call and speak with ████████.

22. At approximately 5:24 pm, surveillance officers observed a male believed to be ████████ driving a BMW SUV ████████ arrive at ████████. MACK and ████████ met outside the building and then entered the residence. Several minutes later, MACK exited the residence carrying a plastic shopping bag and left the area in the Hyundai. Agents monitoring a pole mounted camera in the area of 26 Malvern Road observed the Hyundai arrive at 26 Malvern Road at approximately 7:53 pm. MACK, carrying a bag and accompanied by a female, exited the Hyundai and entered 26 Malvern Road. In my training and experience, and based on the investigation to date, I believe that MACK delivered cocaine to ████████ and returned to 26 Malvern Road to deliver the cash proceeds to MELENDEZ.[3]

---

[3] Notably, and likely relevant to RODRIGUEZ's request earlier in the day for money to post bail for BURGOS, MELENDEZ called RODRIGUEZ at approximately 8:03 pm and stated "I told, I told you what I had, well I got more than that now though. I didn't count, I just got to tell them." Based on my training and experience, and the investigation to date, I believe that MELENDEZ was informing RODRIGUEZ that he now had the additional funds that RODRIGUEZ had requested, further evidence that MACK delivered cash proceeds to MELENDEZ minutes before at 26 Malvern Road.

April 22, 2019 Distribution of Cocaine by MELENDEZ and MACK to ▇▇▇▇▇▇

28.     On April 22, 2019, at approximately 11:39 am, MELENDEZ called MACK and

informed MACK that ▇▇▇▇▇▇▇▇▇▇▇ was expecting MELENDEZ to send someone.

Later, at approximately 12:29 pm, MACK sent a text message to MELENDEZ that read

"location."  At approximately 12:48 pm, MACK called MELENDEZ, during which

MELENDEZ directed MACK to "Mula's [RODRIGUEZ's] spot."

29.     Based on those communications, agents surveilled the area of RODRIGUEZ's

residence at 69 Cutler Street.  At approximately 1:02 pm, a surveillance officer observed the

black Jaguar FPace SUV used by MELENDEZ parked in front of 69 Cutler Street.[4]  At

approximately 1:13 pm, the surveillance officer observed a Nissan Rogue in the driveway at 69

Cutler Street.

30.     At approximately 1:27 pm, a surveillance officer observed the Nissan Rogue

depart Cutler Street.  An agent identified MACK as the operator of the vehicle when it was in the

vicinity of Cumberland Farms on Grafton Street in Worcester.

31.     MACK proceeded onto Interstate 495 North.  At agents' direction, Massachusetts

State Police stopped MACK's vehicle.  The troopers determined that MACK was not an

authorized operator of the Rogue per the rental agreement; they removed MACK from the

vehicle and, due to the heavy rain, placed him in rear of the state police cruiser.  Troopers

inventoried the Nissan Rogue with negative results and had it towed to the barracks.  They then

drove MACK to a local convenience store so that he could call for a ride.

32.     Notably, that same day, MACK used his phone to post a video to his SnapChat

---

[4] MELENDEZ rented and began using the Jaguar SUV after his Mercedes C-300 sedan was involved in a
one car collision on or about April 16, 2019.

account.  That video shows MACK, apparently seated in the police cruiser, laughing and smiling

behind a text banner on the screen that read "STUPID ASS POLICE IF ONLY THEY KNEW

LMAO."[5]

33.     Later that night, at approximately 9:49 pm, MACK called MELENDEZ and

advised MELENDEZ that ████████████didn't answer."  MELENDEZ instructed MACK

to "knock on █████ door" and that he [MELENDEZ] would call █████████.  At approximately

9:54 pm, MELENDEZ called █████████ and told █████████that "Leg [MACK] is already

there."  █████████ told MELENDEZ that he needed five minutes because he just got out of the

shower.

34.     At approximately 9:57 pm, a surveillance officer observed a tan Nissan Altima

(the "Altima") registered to Juan RODRIGUEZ at 69 Cutler Street, Worcester – parked in front

of █████████ residence at █████████████, Manchester, New Hampshire.  A

surveillance officer subsequently observed MACK operating the Altima as it departed the area of

████████████████ at approximately 10:10 pm.

35.     Later that night, at approximately 11:15 pm, surveillance officers observed the

Altima arrive in the area of 69 Cutler Street.  A male, carrying a bag, exited the driver's side of

the vehicle and approached 69 Cutler Street.  At that same time, MACK called MELENDEZ and

told MELENDEZ that he was at "the crib."  MACK confirmed when MELENDEZ asked,

"Mula's [RODRIGUEZ's]?"  MELENDEZ then directed MACK to meet him at Melendez's

sister's residence.  In response to MACK's request for the address, at 11:17 pm, MELENDEZ

texted "531 main st" to MACK.  At approximately 11:29 pm, a surveillance officer observed

---

[5] "LMOA" is an abbreviation commonly used on social media for "Laughing My Ass Off."

MACK park the Altima across from 531 Main Street in Worcester and exit the vehicle carrying a gray bag.

36.     Based upon the intercepted communications and the physical surveillance conducted, I believe that MELENDEZ coordinated a delivery of cocaine by MACK to ▬▬▬▬ on April 22, 2019.  I believe that MSP initially interrupted the delivery when it stopped the vehicle that MACK was operating that afternoon; however, it appears that MACK was able to conceal the narcotics on his person and avoid detection by the police.  Agents believe that MACK successfully delivered the cocaine to ▬▬▬▬ later that evening and returned to 531 Main Street to deliver the proceeds of the cocaine sale to MELENDEZ.

### May 1, 2019 Distribution by MELENDEZ and RODRIGUEZ to the Brother of D.B.[6]

37.     On May 1, 2019 at approximately 8:08 pm, RODRIGUEZ placed a phone call to MELENDEZ.  During the ensuing conversation, MELENDEZ informed RODRIGUEZ that MELENDEZ forgot he had arranged for "[D.B.'s] brother" to go "over there."  MELENDEZ asked RODRIGUEZ if he could "take care of it."  RODRIGUEZ agreed and asked MELENDEZ if that "thing" was "in the spot," to which MELENDEZ replied, "Jordan [i.e. BURGOS] knows where it is."  RODRIGUEZ advised MELENDEZ to "say less" and MELENDEZ instructed RODRIGUEZ, "Hey, throw him [D.B.'s brother] forty-six if you could.  If you could.  Throw him forty-six."  RODRIGUEZ agreed.

38.     The call described above occurred approximately twenty minutes after a call between MELENDEZ and a male with the initials L.B., who is a brother of the male known as D.B.  During that brief call, MELENDEZ informed L.B. that "I will hit you right back on the

---

[6] D.B. is known to Worcester police as a Vice Lords member.

other one."

39.     Based on training and experience, as well as this investigation to date, I believe

that MELENDEZ had agreed to provide narcotics to L.B. and the men discussed that

arrangement in further detail using a different phone to which MELENDEZ had access.  Further,

I believe that MELENDEZ was directing RODRIGUEZ to distribute narcotics to L.B. on

MELENDEZ's behalf.

   <u>May 6, 2019 Distribution by CORDOVA to MELENDEZ and</u> ████

40.     During the investigation, agents identified Angel CORDOVA a/k/a "Cano" as a

primary source of cocaine for MELENDEZ.

41.     On May 6, 2019, at approximately 4:54 pm, CORDOVA, using telephone number

(508) 615-7134, called MELENDEZ.  During the ensuing conversation MELENDEZ told

CORDOVA "Give me uh..uh… bring five."  CORDOVA asked, "How much?"  MELENDEZ

responded "Five."  Based on my training and experience, and the investigation to date, I believe

MELENDEZ was coordinating the acquisition of 500 grams of cocaine from CORDOVA.

42.     On May 6, 2019, at approximately 8:09 pm, CORDOVA called MELENDEZ and

stated, "I'm ready."  MELENDEZ replied "I'm gonna send - where you came last time,

remember?  Where you and him came, same place."  CORDOVA affirmed and MELENDEZ

said, "Six.  Six."  CORDOVA replied, "No, five I got."

43.     On the same date, at approximately 8:25 pm, CORDOVA again called

MELENDEZ.  MELENDEZ explained to CORDOVA that he [MELENDEZ] had to go to the

mall, so would not be available to meet.  MELENDEZ told CORDOVA, "I'm gonna have my

man…he'll run down to you," then again asked, "what number?"  CORDOVA replied, "Five."

44.    At approximately 8:36 pm, CORDOVA called MELENDEZ.  MELENDEZ asked "what are you driving in?  I'm having him come down."  CORDOVA informed MELENDEZ that he was in a gray Charger.  MELENDEZ then told CORDOVA, "Alright, I'll have him come down.  It's a ███████"

45.    A minute later, at approximately 8:37 pm, MELENDEZ called ████ and told ████, "Gray Charger, he is out there."  ████ asked "He is in a gray Charger?  He is out there now?  Is he on Cutler?"  MELENDEZ responded, "Yeah, uh-huh."

46.    At approximately 8:41 pm, a surveillance officer observed a grey Dodge Charger ████████████████████████ arrive at 69 Cutler Street and park.  The surveillance officer observed ███████████████, exit 69 Cutler Street, approach the Dodge Charger for a brief period, and return to 69 Cutler Street.  Less than 3 minutes after it arrived on Cutler Street, the Dodge Charger left the area.  Based on my training and experience, as well as intercepted communications, I believe that CORDOVA delivered 500 grams of cocaine to ████ and MELENDEZ at 69 Cutler Street on May 6, 2019.

<u>May 8, 2019 Distribution of Cocaine by MELENDEZ and ████ to ████████</u>

47.    The following day, May 7, 2019 at approximately 5:23 pm, MELENDEZ called ████████ and informed him that he "had someone who was going to be driving past there but they left."  ████████ replied, "I ain't ready yet."  MELENDEZ said, "there's four there for you so the sooner the better."  ████████ explained he was "waiting til I was thin."  ████████ told MELENDEZ that he would "be there tomorrow definitely" and said that he would see MELENDEZ "tomorrow."  Based on my training and experience, and the investigation to date, I believe that MELENDEZ was arranging to distribute 400 grams of cocaine ("there's four there for you") to ████████, while ████████ explained that he still

13

had some inventory on hand ("waiting til I was thin"). The men agreed to engage in the drug

sale the following day.

48.    On May 8, 2019, at approximately 12:02 pm, MELENDEZ called 

and informed ▮▮▮▮▮ that MELENDEZ would "head out there soon." ▮▮▮▮▮

responded "Alright."

49.    At approximately 2:23 pm, an officer conducting surveillance in the area of 69

Cutler Street observed the Altima registered to Juan RODRIGUEZ – and previously used by

MACK on April 22, 2019 – leave the driveway of 69 Cutler Street. At approximately 2:25 pm

on the same date, an officer monitoring the IP camera installed on ▮▮▮▮▮ observed the

Altima arrive at ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮. A male exited the driver's side and entered ▮▮▮▮▮▮. At

approximately 2:28 pm, the officer monitoring the IP camera observed the same male exit ▮▮

▮▮▮▮▮ carrying a black bag, re-enter the Altima, and drive from the area.

50.    According to information obtained pursuant to a court authorized pen register and

trap-and-trace device installed on the phone used by ▮▮▮▮▮, on May 8, 2019, at

approximately 4 pm, ▮▮▮▮▮ phone received an incoming voice call from the cell phone

used by ▮▮.[7]

51.    At approximately 4:40 pm, MELENDEZ called ▮▮▮. MELENDEZ stated that

he was "just making sure everything was good." ▮▮▮ responded that he had "a little bit of a

scary moment for four exits." MELENDEZ acknowledged and told ▮▮▮ he would see him

upon his return to Worcester. At approximately 5:17 pm, MELENDEZ again called ▮▮▮, who



---

[7] The distance between ▮▮▮▮▮, Worcester, Massachusetts ▮▮▮▮▮ and ▮▮▮▮▮
▮▮▮▮ Manchester, New Hampshire ▮▮▮▮▮▮ is approximately 73 miles.

informed MELENDEZ he was "just getting back into Worcester now."  MELENDEZ explained

that an unidentified male (possibly RODRIGUEZ) needed a baseball bag that was in the car that

██████ was driving.

52.     Based on the content of the communications referenced above, as well as this

investigation to date, I believe that ████ used RODRIGUEZ's vehicle to deliver cocaine –

likely 400 grams – to ████████ in Manchester, New Hampshire.  ██████ statement that

things "got a little scary for four exits" suggest that something, perhaps the presence of

uninvolved law enforcement, had caused ████ some anxiety, an indication that ████ knew he

was involved in criminal activity.

### May 17, 2019 Distribution of Cocaine by CORDOVA to MELENDEZ

53.     On May 16, 2019, at approximately 1:03 pm, CORDOVA called MELENDEZ

and asked if MELENDEZ was "going to need it or no." MELENDEZ told CORDOVA that he

did "need it," but that it would be a couple of hours because MELENDEZ was going to

Providence.  MELENDEZ again told CORDOVA he did "need him."  CORDOVA affirmed and

told MELENDEZ to call him back.

54.     That same day, at approximately 4:46 pm, CORDOVA called MELENDEZ and

said that he would "link" with CORDOVA around 6:30 after he picked up his son from school.

MELENDEZ further stated "five, or more maybe, probably more but five minimum."  Based on

my training and experience, and the investigation to date, I believe that MELENDEZ and

CORDOVA were coordinating CORDOVA's delivery of cocaine to MELENDEZ, with

MELENDEZ informing CORDOVA that he needed at least 500 grams of cocaine.

55.     On May 17, 2019, at approximately 1:56 pm, CORDOVA again called MELENDEZ and asked if MELENDEZ was "ready."   CORDOVA informed MELENDEZ that he had "531 in one piece" and did not want to "break it."   MELNDEZ agreed to "take it all."

56.     On May 17, at approximately 4:23 pm, CORDOVA called MELENDEZ to inform MELENDEZ he was "there."   MELENDEZ said that he would be there in five minutes, and directed CORDOVA to go in front of "26."

57.     Minutes later, at approximately 4:27 pm, agents monitoring the pole camera in the area of 26 Malvern Road observed a black Mazda CX9 SUV registered to CORDOVA driving back and forth on Malvern Road.   At approximately 4:36 pm, the Mazda and the black Jaguar SUV driven by MELENDEZ parked in front of 26 Malvern Road.   Agents observed MELENDEZ and a white male, believed to be an individual known to agents, exit the Jaguar and meet with CORDOVA.   The three men entered the front door of 26 Malvern Road.   Several minutes later, CORDOVA exited the front door of 26 Malvern Road, entered the Mazda CX9 and left the area.

58.     Based on my training and experience, as well as the investigation to date, I believe MELENDEZ and CORDOVA met at 26 Malvern Road on May 17, 2019 to conduct a narcotics transaction.   The calls between MELENDEZ and CORDOVA prior to the meeting regarding CORDOVA having "531" and not wanting to "break it" suggest CORDOVA had 531 grams of cocaine and wanted MELENDEZ to purchase the entire amount.   MELENDEZ directed CORDOVA to "26," or 26 Malvern Road, where agents observed CORDOVA and MELENDEZ enter the residence together.   CORDOVA left a short time later, consistent with a drug deal.

<u>May 25, 2019 Distribution of Cocaine from CORDOVA to MELENDEZ to ██████</u>

59.     On May 24, 2019, at approximately 6:05 pm, CORDOVA called MELENDEZ.
During that call MELENDEZ asked CORDOVA if it was the "same" or "different;" CORDOVA
replied that it was a little "different."  MELENDEZ told CORDOVA, "two and a half" and then
"three."  MELENDEZ and CORDOVA agreed to speak later.  At approximately 7:16 pm,
CORDOVA again called MELENDEZ, at which time the men agreed to meet the next morning

60.     On May 25, 2019 at approximately 2:00 pm, CORDOVA called MELENDEZ
during which the men agreed to meet and CORDOVA confirmed "three right?"  MELENDEZ
acknowledged.  At approximately 2:24 pm, CORDOVA called MELENDEZ and asked where
they should meet.  MELENDEZ stated he would text CORDOVA the address.  At approximately
2:25 pm, MELENDEZ sent a text to CORDOVA that read "151 Hartford turnpike Shrewsbury."
Based on the content of these calls, as well as this investigation to date, I believe that
MELENDEZ and CORDOVA agreed to meet at MELENDEZ's trailer home located at 151
Hartford Turnpike, Lot #4, in Shrewsbury to engage in a drug deal.  MELENDEZ and
CORDOVA discussed "two and a half" and "three," which, based upon my training and
experience, as well as this investigation to date, I believe referred to 250 to 300 grams of
cocaine.

61.     Agents conducted surveillance in the area of 151 Hartford Turnpike in
Shrewsbury.  At approximately 2:51 pm, a surveillance officer observed the black Mazda CX9
SUV registered to CORDOVA traveling on Hartford Turnpike in Shrewsbury in the direction of
151 Hartford Turnpike.  Approximately one minute later, an agent monitoring an Internet
Protocol (IP) camera installed in the area of 151 Hartford Turnpike observed the Mazda arrive

and park at 151 Hartford Turnpike.  CORDOVA exited the Mazda with a black bag slung over

his right arm and entered the trailer at Lot #4.[8]

62.     Minutes later, at approximately 3:10 pm, the agent monitoring the IP camera

observed CORDOVA exit the trailer at Lot #4, retrieve something from the front seat of the

Mazda CX9 and re-enter the trailer.

63.     At approximately 3:19 pm, while CORDOVA and MELENDEZ were meeting in

the trailer, MELENDEZ made a brief outgoing call to RODRIGUEZ during which the following

conversation ensued:

| | |
|---|---|
| RODRIGUEZ: | Yeah. |
| MELENDEZ: | Do you, do you know what I'm saying? |
| RODRIGUEZ: | Yeah, I know what you are saying. |
| MELENDEZ: | [U/I] [Voices overlap] |
| RODRIGUEZ: | I wanted to halla at you about something else. |
| MELENDEZ: | Alright but I'm meeting up with him now, that's what I'm saying. |
| RODRIGUEZ: | Alright. |
| MELENDEZ: | Do you want it or no? |
| RODRIGUEZ: | Huh? |
| MELENDEZ: | Do you want it or no? |
| RODRIGUEZ: | I said yeah. |
| MELENDEZ: | Okay but what, that's what I'm saying an estimate. |
| RODRIGUEZ: | Eh just do what you wrote. |

---

[8] These observations were contemporaneous with two calls between MELENDEZ and CORDOVA
during which MELENDEZ directed CORDOVA where to park.

While CORDOVA was inside the trailer home, at approximately 3:08 pm, MELENDEZ received a call
on the MELENDEZ Phone that was placed from the phone service of a correctional facility.  While
MELENDEZ was entering information to establish a phone account with that facility, MELENDEZ could
be heard apparently speaking to someone in the trailer, and said "that's 20 grams."

MELENDEZ:          Alright. Alright.

Based on my training and experience, and the investigation to date, I believe that MELENDEZ

and RODRIGUEZ had previously discussed obtaining controlled substances from CORDOVA,

and MELENDEZ was confirming in his call that he was presently meeting with CORDOVA and

that RODRIGUEZ wanted to acquire the substances.[9]

64.      At approximately 3:20 pm, while CORDOVA and MELENDEZ were meeting in

the trailer,          called MELENDEZ and informed MELENDEZ that he was "like forty

minutes away."          asked MELENDEZ "Where you at? Where I saw you last time?"

MELENDEZ replied "the trailer."  Based on the content of these calls, as well as this

investigation to date, I believe MELENDEZ was directing          to 151 Hartford

Turnpike, Shrewsbury so that MELENDEZ could deliver cocaine to          .

65.      At approximately 3:47 pm, CORDOVA exited the trailer at Lot #4 and left the

area of 151 Hartford Turnpike in the Mazda CX9.  Surveillance units followed CORDOVA as he

returned to his residence at 29 Laurel Street in Worcester.

66.      At approximately 3:55 pm, the agent monitoring the IP camera observed

MELENDEZ exit Lot #4 and depart 151 Hartford Turnpike in the black Jaguar F-Pace SUV.  At

approximately 4:17 pm, the agent observed a black Honda Civic bearing New Hampshire

registration arrive at 151 Hartford Turnpike.[10]  The agent observed a male, consistent in

---

[9] RODRIGUEZ indicated that MELENDEZ should "just do what you wrote."  Agents did not intercept
any prior relevant text message between RODRIGUEZ and MELENDEZ.  It is possible that
MELENDEZ either used a different phone or that he communicated using an iMessage (rather than an
SMS text message), which agents are not able to intercept.

[10] The Honda is registered to a female (born 1981) with an address of
Manchester, New Hampshire.          address of record is also
Manchester, New Hampshire.

appearance with ▮▮▮▮▮▮▮▮, exit the Honda carrying a white plastic bag.  At approximately

4:20 pm, the agent observed MELENDEZ return to 151 Hartford Turnpike in the black Jaguar

SUV.  MELENDEZ and ▮▮▮▮▮▮▮▮ entered the trailer at Lot #4 together.

67.     At approximately 4:30 pm, the agent observed MELENDEZ exit the trailer and

retrieve a manila-colored envelope from the rear of the Jaguar.  MELENDEZ then re-entered the

trailer.

68.     Eight minutes later, at approximately 4:38 pm, ▮▮▮▮▮▮▮ exited the trailer at

Lot #4 carrying a white plastic bag, which he placed in the trunk of the Honda Civic.

▮▮▮▮▮▮▮ then entered the Honda Civic and drove from the area of 151 Hartford Turnpike as

investigators followed.

69.     At approximately 5:33 pm, New Hampshire State Police stopped the Honda on

Route 3 in New Hampshire.  Troopers identified ▮▮▮▮▮▮▮ as the operator and sole occupant.

▮▮▮▮▮▮▮ admitted to troopers that he had cocaine in the vehicle.  The troopers subsequently

located and seized, amongst other things, approximately 200 grams of suspected powder cocaine

and approximately 115 grams of suspected crack cocaine.[11]

70.     Based on the intercepted communications, physical surveillance, monitoring of

the IP camera and the seizure of suspected cocaine and cocaine base from ▮▮▮▮▮▮▮, I believe

that CORDOVA distributed cocaine to MELENDEZ at 151 Hartford Turnpike on May 25, 2019,

and that MELENDEZ subsequently distributed cocaine and cocaine base to ▮▮▮▮▮▮▮ later

that same afternoon.

---

[11] The troopers secured the suspected cocaine as evidence at a State Police barracks.

<u>Further Evidence of the Concerted Efforts by MELENDEZ and RODRIGUEZ to Store
and Distribute Controlled Substances from 69 Cutler Street</u>

71.     On May 16, 2019, Southbridge police arrested RODRIGUEZ for misdemeanor

offenses related to a dispute that occurred in a Southbridge bar.[12]  Although RODRIGUEZ was

released from custody after this arrest, on or about May 20, 2019, Worcester Superior Court

issued a warrant for RODRIGUEZ's arrest for the violation of RODRIGUEZ's conditions of

pre-trial release on open charges in Worcester Superior Court.

72.     On May 20, 2019 at approximately 6:07 pm, MELENDEZ called a close family

member of RODRIGUEZ who had access to 69 Cutler Street.  During the ensuing conversation,

MELENDEZ and RODRIGUEZ's family member discussed RODRIGUEZ's arrest and the

likelihood that RODRIGUEZ would be held in custody for three months.  MELENDEZ

instructed RODRIGUEZ's family member to "grab everything, a bunch of it is mine."

RODRIGUEZ's family member advised MELENDEZ that he didn't "touch anything," and said,

"we will go together."  MELENDEZ continued, "they know he's locked up and they assume the

worst…I was gonna switch locations."  RODRIGUEZ's family member assured MELENDEZ

that BURGOS a/k/a "Slim" a/k/a "Jordan" "would make a phone call quick – everything is under

control."

73.     Based on this conversation, taken in the context of the investigation to date, I

believe MELENDEZ and RODRIGUEZ's close family member were discussing the possibility

of relocating narcotics and other contraband from 69 Cutler Street to another location.  Initially

MELENDEZ instructed RODRIGUEZ's family member to "grab everything," i.e. to remove all

---

[12] RODRIGUEZ was charged in Dudley District Court with disorderly conduct, disturbing the peace,
intimidation, and assault with a dangerous weapon.

illicit items from 69 Cutler Street.  MELENDEZ's admission that "a bunch of it is mine,"

confirms other information obtained through this investigation suggesting that MELENDEZ,

RODRIGUEZ, and others known to agents work together to obtain and distribute narcotics from

69 Cutler Street.  MELENDEZ's statement they assume the worst" was likely a reference to the

possibility that other individuals with access to 69 Cutler Street may steal narcotics, as they

assume RODRIGUEZ will be unable to monitor their activities due to his incarceration.

     C.    <u>Facts Establishing Probable Cause for Firearm Charges</u>

74.    On May 24, 2019, at approximately 12:58 pm, agents monitoring communications

on the RODRIGUEZ Phone intercepted a call from MACK, using phone number 857-318-5610,

to RODRIGUEZ.  (Session 2275).  During that call, MACK asked RODRIGUEZ if he knew

anyone "that would wanna buy this toy."  In my training and experience, I know that the term

"toy" is often used to describe a firearm.  Rodriguez asked "What's the number?"  MACK

responded "I'm just trying to get what I spent for it, I spent six for it, I mean I'll take five,

though."  RODRIGUEZ told MACK, "let me ask around. Worst case I probably just grab it."

75.    Later that evening, at approximately 3:17 pm, MACK again called RODRIGUEZ.

(Session 2302).  During that call, MACK asked "What you think about that thing I asked you

about earlier but either? Cause you know the drill, I still need, I still need to come up with bread,

I'm trying to get rid of this shit."  RODRIGUEZ responded, "if you could get out here with it,

then we would make it happen. How bout that?"  MACK then stated "Yeah, that's what I'm

saying... As long as you tell me for sure you'll do that...you gonna get it, I'll, I'll make somebody

take me nigga, if I have to pay him."  RODRIGUEZ offered "Aight, um, you wanna do that for

half?"  MACK agreed to that arrangement.  RODRIGUEZ then instructed MACK "just call me

when you are on your way bro."

76.     At approximately 5:21 pm, MACK called RODRIGUEZ and indicated that he would be leaving "to bring that to you bro" in approximately two minutes.  (Session 2327). RODRIGUEZ responded "A'ight, cool I'll be at the spot."

77.     Based on the communications between RODRIGUEZ and MACK, agents concluded MACK would be traveling to Worcester to sell RODRIGUEZ a firearm.   At approximately 2 pm, agents initiated surveillance in the area of MACK's residence at 86 Balch Street, in Pawtucket, Rhode Island.  At approximately 5:22 pm, surveillance officers observed a white Toyota Camry arrive at 86 Balch Street.  Agents observed MACK exit 86 Balch Street carrying a white bag in his left hand and enter the Camry.  Agents followed as Camry left the area.

78.     Agents maintained followed the Camry as it travelled from Pawtucket to Grafton Street in Worcester.  Worcester police stopped the Camry and removed MACK from right rear passenger seat of the Camry.  On the left rear passenger seat, officers located a white plastic bag that contained a hard, black Walther firearm case.  Inside the case was a silver Walther (InterArms) PPK/S .380 caliber semi-automatic pistol with black grip, bearing serial number S064322.  Officers located .380 caliber ammunition in the magazine.

79.     At the time of his arrest, officers also seized a black LG cell phone from MACK's possession.  An officer on scene who has participated in this investigation used a blocked phone number to call phone number 857-318-5610 and confirmed that was the number assigned to the phone seized from MACK.

80.     Walther is a German firearm producer that has licensed firearm producers in the United States to manufacture firearms under the "Walther" name.  The firearm seized from

MACK on May 24, 2019 was manufactured by InterArms, a Virginia based firearm producer. Thus, the firearm seized from MACK necessarily affected interstate commerce.

81.     I have reviewed MACK's Massachusetts criminal history.  In October 2006, MACK was convicted in Dorchester District Court for possession of a firearm without a permit and was sentenced to 18 months in jail.

## CONCLUSION

82.     Based on the foregoing, I submit that there is probable cause to believe that Juan E. RODRIGUEZ, Antoine MACK, ▮▮▮▮▮, Angel CORDOVA, and ▮▮▮▮▮ have committed the Subject Offense, to wit: conspiracy to possess with intent to distribute and to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 846.  There is also probable cause to believe that MACK also was a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

WHEREFORE, your affiant respectfully requests that the Court issue the requested criminal complaints and arrest warrants.

ANTHONY J. VENTETUOLO
Special Agent
Bureau of Alcohol, Tobacco, Firearms & Explosives

Sworn and subscribed to before me this   4th   day of June 2019, at Worcester, Massachusetts.

DAVID H. HENNESSY
United States Magistrate Judge
District of Massachusetts