UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.  )<br>)  Criminal Action No. 19-cr-40025-TSH<br>JUAN RODRIQUEZ )<br>)<br>)<br>Defendants )  | |

**FINDINGS AND ORDER ON DEFENANT JUAN RODRIGUEZ'S MOTION TO SUPPRESS THE SEARCH OF 69 CUTLER STREET, WORCESTER, MASSACHUSETTS (Document # 175)**

**April 5, 2021**

**Introduction**

The Defendant, Juan Rodriquez moves to suppress from the introduction against him at trial evidence obtained pursuant to a warrant authorizing the search of premises at 69 Cutler Street, Worcester, Massachusetts. He assigns as reasons for the suppression that the search warrant affidavit failed to provide a sufficient nexus between Rodriquez and the location to be searched. For the reasons set forth below that motion is **denied**.

**Background**

The search warrant in this case was part of a lengthy investigation into co-Defendant Junior Melendez, his associates, and a violent street gang called the Almighty Vice Lords. In furtherance of the investigation the authorities obtained warrants to intercept wire communications on Melendez and Mr. Rodriguez' phones. Much of the information contained in the affidavit in support of the warrant to search 69 Cutler Street is attributable to the two

wiretaps, GPS location warrants for vehicles, and physical observation and surveillance done by the Worcester Police and the Bureau of Alcohol, Tobacco, and Firearms.

The search warrant at issue in this case issued on June 4, 2019. Between March 22, 2019 and May 23, 2019, the affidavit in support of the search warrant detailed 13 separate instances in which the Cutler Street address is mentioned in connection with the drug trafficking conspiracy. The affidavit relates that the Defendant Juan Rodriguez uses 69 Cutler Street as his address with the Registry of Motor Vehicle and that his parents are the owners of record.

The affidavit references an intercepted phone call in March of 2019 between Melendez and Christopher Sargent (who was dealing cocaine with Melendez) wherein Melendez instructs Sargent to meet him at 69 Cutler Street. In furtherance of that intercepted phone call the agents observed Sargent arrive at 69 Cutler Street in a Ford Focus and stay for several minutes and then depart. At the same time, the agents observed a black Dodge Charger (used by Melendez) parked in the driveway of 69 Cutler Street.

On March 25, 2019, Melendez instructed co-Defendant Antoine Mack via phone to meet him at "M spot" which the affidavit identified as 69 Cutler Street. Mr. Rodriguez's nickname is "Mula Monopoly." Surveillance confirmed that Melendez' black Dodge Charger and a blue Hundai Tuscon used by Mack were present at 69 Cutler Street at the time Melendez instructed Mack to meet him.

On March 29, 2019, Melendez again instructed Sargent via phone to travel to 69 Cutler Street and surveillance confirmed Sargent's arrival (in the same Ford Focus) at the residence.

March 31, 2019 surveillance observed a blue Hundai Tuscon used by co-Defendant Antoine Mack at 69 Cutler Street. That surveillance also observed an unknown male exit that address

and approach the Tuscon for a brief period and then return to 69 Cutler Street.  Later that date agents observed the same Tuscon arrive at Defendant Mack's residence in Pawtucket, R.I.

On April 3, 2019, Mack called Melendez about earning money by doing a drug deal which Melendez described as a "Lido thing" using the nickname of co-conspirator Carlos Richards. That afternoon the agents observed a black Mercedes used by Melendez parked in the driveway at 69 Cutler Street.  Shortly thereafter Antoine Mack's blue Hundai arrived, the driver entered the address and left a short time later. That Hundai was followed to co-Defendant Richards residence at 70 Notre Dame Avenue, Manchester, NH.  Soon thereafter a BMW SUV registered to Richards also arrived.  Agents observed Mack and Richards meet for several moments outside the residence, enter that residence, and several minutes later Mack exit carrying a plastic shopping bag.  Later that evening police observed Mack arrive at Melendez' residence at 626 Malvern Road, Worcester, Massachusetts. Mack entered the home carrying the plastic shopping bag.  Later that same day Mack posted a photograph on his Instagram account of him holding numerous bundles of cash.  The affiant ,Agent Ventetuolo,, opined that in his training and experience that Mack, Richards, and Melendez were involved in a drug transaction in which Mack retrieved drugs from Melendez at 69 Cutler Street, delivered them to Richards in NH, and brought the proceeds back to Melendez at Malvern Road.

On April 22, 2019, Melendez directed Mack to drive to Cutler Street and agents observed a Jaguar SUV used by Melendez parked in front of that address.  They also observed Mack's gray Nissan Rogue driven by Mack.  Massachusetts State Police followed and stopped the vehicle on Rte. 495 North and searched it.  The police were not able to locate any contraband in the vehicle and Mack was eventually released.  Later that day, Mack posted images to his Snapchat account

showing him seated in a police cruiser laughing behind a tech banner on the screen that read "stupid ass police if they only knew LMAO."

On a May 6, 2019 intercepted phone call, Melendez directed co-Defendant Angel Cordova to travel to 69 Cutler Street in-order to participate in a narcotics transaction.  Cordova and Melendez discussed drug quantities ("5" or 6") over the phone and Melendez directed co-Defendant Kevin Jean to retrieve the drugs from Cordova.

On May 8, 2019, surveillance placed Rodriguez' tan Nissan Ultima in the driveway of 69 Cutler Street.  The Ultima left the driveway and travelled to 105 Hamilton Street in Worcester.  A male left the Ultima, went into that address and came out carrying a black bag, got into the driver's seat and left the area.  Intercepted phone records revealed that co-Defendant Kevin Jean had a phone conversation with Richards that afternoon.  Melendez and Richards were intercepted the day before discussing someone driving thru Richards area and that Melendez had "4."  The agent opined that Jean had delivered cocaine on behalf of Melendez, through Richards, using Rodriguez' car.

A May 14, 2019 phone call between Melendez and Josue Rodriguez and subsequent surveillance showed that Melendez supplied cocaine to Josue Rodriguez at Pho Dakao Restaurant in Worcester.  They discussed the price ("eleven eighty") and the agents observed Melendez leave Cutler Street, arrive at the Pho Dakao Restaurant, and meet with Joshue Rodriguez who left 9 minutes later.  Melendez had left 69 Cutler Street for the meeting with Rodriguez at the restaurant.

On a May 15, 2019 intercepted phone call, Melendez directed Sargent to 69 Cutler, instructed Juan Rodriguez to "grab everything, a bunch of it is mine" and that he was going to switch locations from 69 Cutler Street.

Discussion

An application for a search warrant must establish a probable cause to believe; (1) a crime has been committed, (the "commission" element), and (2) enumerated evidence of the offense will be found at the place to be searched. The so-called "nexus" element. The *United States v. Vayas-Diaz* 95 F.3d 105, 111 (1st Cir. 1996). With regard to the nexus element, the task of a magistrate judge in determining whether probable cause exists is "to make a practical, common-sense decision whether, given all circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Feliz* 182, F.3d 82, 86 (1st Cir. 1999). Quoting from *Illinois v. Gates* 462 U.S. 213. 238 (1983). Here, there are at least 13 instances between March and late May 2019 which implicated 69 Cutler Street as premises where it was reasonable to assume that evidence of drug deals would be found. The issuing magistrate judge had more than sufficient probable cause to believe that evidence of drug trafficking would be found at 69 Cutler Street.

The Government also argues that the good faith exception should apply here. *United States v. Leon,* 468 U.S. 897 (1984). The good faith exception provides that even if a search warrant is flawed, the evidence should not be suppressed where "the police act with an objectively reasonable good faith belief that their conduct is lawful." *Davis v. U.S*. 131 Sup. Ct. 2419, 2422 (2011). The good faith exception would not apply if the affiant misled the magistrate, or demonstrated a reckless disregard for the truth, or the magistrate wholly abandoned his judicial duty, or probable cause is so lacking that belief that probable cause did exist is "entirely unreasonable," *Leon Supra* at 923. I find that none of those four conditions exist; namely there is no misleading information in the affidavit and that the good faith exception applies.

Conclusion

For the reasons set forth above, the Defendant's Motion to Suppress is **denied.**

/s/Timothy S. Hillman
Timothy S. Hillman
District Judge
