UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES, ) | |
| ) | |
| v. ) | Docket No. 19-40025-TSH |
| ) | |
| JUAN RODRIGUEZ, ) | |
| Defendant. ) | |
| ) | **HEARING REQUESTED** |

# RENEWED MOTION TO REVOKE DETENTION ORDER PURSUANT TO 18 U.S.C. 3164

NOW COMES the defendant, Juan Rodriguez, ("Rodriguez"), and hereby moves this Honorable Court pursuant to 18 U.S.C. §§ 3142(a)–(c), 3164 to release him pending trial based upon new circumstances and the Speedy Trial Act. In support thereof, counsel states the following:

1. On June 5, 2019, Rodriguez was arrested on the instant charges while vacationing in Hawaii. (ECF#7).

2. He waived his right to a Rule 5 hearing and the Government's Motion to Detain Defendant Without Bail was granted in Hawaii on June 7, 2019. (ECF#9-5 & ECF#9-7).

3. After a hearing before this Court on the Defendant's Motion to Revoke Detention Order, (ECF#50 & ECF#54), Rodriguez's motion was denied. (ECF#59, Hillman, J.).

1

4. The Court found that Rodriguez was both a risk of flight and a danger to the community. (ECF#59, p.5-6).

5. Rodriguez has been in custody for almost 31 months awaiting trial.

6. It is respectfully submitted that the Court's ruling was based in part on two facts that no longer exist due to the passage of time.

7. The Court found that (1) Rodriguez is likely to serve more time than he has on his prior state charges and that (2) he and his father were both connected to 69 Cutler Street where guns and drugs were allegedly found. (p.5).

8. These findings by the Court are no longer true due to the passage of time.

9. Rodriguez has served over 31 months on this case and it is highly unlikely that he will serve any sentence that is longer than that which he has already served.

10. Further, 69 Cutler Street is no longer owned by Rodriguez or his father. (See Exhibit 1, attached hereto).

11. The Government has repeatedly conceded it cannot prove that Rodriguez was involved in any quantity over 500 grams.

12. Rodriguez was never found in possession of any cocaine or cocaine base which may result in his acquittal.

13. In its decision the Court also noted that neither party had provided guideline calculations and counsel hereby submits the following calculations of possible outcomes.

14. It is possible that the Rodriguez could be convicted of a conspiracy without any finding of an attributable amount of cocaine or cocaine base which would result in a BOL of 12-18 months at a CHC of II.

15. It is also possible that Rodriguez's guideline range will be between 46 – 57 months based upon a finding of at least 22.4 grams of cocaine base attributable to him but not more than 112 grams and a CHC of II.

16. There does not appear to be a scenario in which Rodriguez's BOL is greater than a level 22.

17. This Court has already sentenced a codefendant to this range.

18. In any case Rodriguez has served a substantial portion of any sentence that would be imposed by this Court if Rodriguez were convicted.

## ARGUMENT

**A. CHANGED CIRCUMSTANCE MANDATE THE RELEASE OF RODRIGUEZ**

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). "The burden of establishing that no combination of conditions will reasonably assure a defendant's appearance for trial rests on the government."

3

*United States v. Palmer-Contreras*, 835 F.2d 15, 17 (1st Cir. 1987); see also *United States v. Torres-Rosario*, 600 F. Supp. 2d 327, 330 (D.P.R. 2009) (in a presumption case, "[t]he government retains the burden throughout the inquiry to prove that no release conditions can reasonably assure the defendant's appearance.").

Any concerns the Court may have about local nonappearance can be allayed by imposing any number of conditions of release that empirically have been shown to reduce the risk of local nonappearance. For example, a study conducted in New York state courts found that text message reminders were able to reduce failures to appear by up to 26 percent, translating to 3,700 fewer arrest warrants per year. See Brice Cooke et al, Text Message Reminders Decreased Failure to Appear in Court in New York City, Abdul Latif Poverty Action Lab (2017), archived at https://perma.cc/JCW7-JVZW. Holistic pre-trial services focused on providing social services and support to clients also reduce the risk of non-appearance across all risk levels in state systems. See generally Christopher Lowenkamp and Marie VanNostrand, Exploring the Impact of Supervision on Pretrial Outcomes, John and Laura Arnold Foundation, Special Report (2013), archived at https://perma.cc/R3F3-KZ76.

Beyond the traditional role of Pretrial Services, this could include providing funding for transportation to court, providing childcare on court dates, and assisting clients in finding stable housing, employment or education. See generally John Clark, The Role of Traditional Pretrial Diversion in the Age of Specialty Treatment Courts: Expanding the Range of Problem-Solving Options at the Pretrial Stage, Pretrial Justice Institute (2014), archived at https://perma.cc/5C8C-7HJK. 12 Moreover, scholars and courts agree that electronic monitoring is especially effective at reducing risk of flight. See, e.g., Samuel R. Wiseman, Pretrial Detention and the Right to the Monitored, 123 Yale L. J. 1344, 1347–48 (2014) ("Increasingly sophisticated remote monitoring devices have the potential to sharply reduce the need for flight-based pretrial detention . . . . [T]he question of finding other ways of ensuring a non-dangerous defendant's presence at trial is one not of ability, but of will. . . ."); id. at 1368–74 (citing studies in both European and American contexts to demonstrate that electronic monitoring is at least as effective as secured bonds at deterring flight, and that it comes at far reduced cost to both the defendant and the government); *United States v. O'Brien*, 895 F2d 810, 814-16 (1st Cir 1990) (describing reduction in flight rate from monitoring program and concluding that "evidence concerning the effectiveness of the bracelet alone arguably rebuts the presumption of flight").

### B. THE SPEEDY TRIAL ACT MANDATES THE RELEASE OF RODRIGUEZ.

The Honorable D. Brock Hornby, United States Judge has held that; "The court found that both the 70-day and the 90-day clocks already had run before defendant's trial was scheduled. *United States v Worthy, 2012 U.S. Dist. Lexis 121895* (1st Cir. 2012). Even though defendant had resisted government efforts to move forward to trial by motion practice under Rule 12 and despite the severe risk that he would flee and his danger to the community he had to be released pursuant to 18 U.S.C. 3164. Even though defendant had to be released, conditions could be imposed. Certainly stringent conditions were appropriate here, such as electronic monitoring, third party custodianship, travel limits, or other devices.

The language of 18 U.S.C. 3164 is straightforward. The courts find no ambiguity in its interpretation. Section 3164 (b) provides that the trial of persons held in custody solely because they are awaiting trial must commence within 90 days following the beginning of such continuous detention. Section 3164 (b) provides thal: the failure to commence trial within the 90 day period, where such failure is not occasioned by the fault and further that no detainee shall be held in custody pending trial after the expiration of such 90-day period. Under the clear language of the statute the reason for delay is irrelevant, so long as it is not occasioned by the accused or his counsel.

This court must acknowledge that; 'No detainee who is detained solely because he is awaiting trial shall be held in custody pending trial after the expiration of such 90-day period required for the commencement of his trial. 18 U.S.C. 3164(c).

Pursuant to 18 U.S.C. 3164(c), a failure to commence trial of a detainee as specified in 3164(b), through no fault of the accused or his counsel, or failure to commence trial of a designated release as specified in 3164(b), through no fault of the attorney for the Government, shall result in the automatic review by the court of the conditions of release.

Now turning back to the present case, Mr. Rodriguez asserts that this Honorable Court should grant the charged defendant his relief sought based on solid grounds that the court must not punish the charged defendant any longer by keeping him in pretrial detention on the account of the Government not being ready to proceed to trial on the court's appointed date and time schedule of December 6, 2021, regardless of whether the delay in providing discovery to Rodriguez was due to the conduct of a third party.

## **CONCLUSION**

For these reasons, Rodriguez respectfully requests that he be released with conditions this Court deems appropriate, under §§ 3142(a)–(c). Because the

government has provided no permissible basis for his on-going pretrial detention under § 3142(f), and continuing to detain Rodriguez violates the law.

                                      Respectfully submitted,

                                        _____
                                        Peter Charles Horstmann, Esquire
                                        BBO #556377
                                        450 Lexington Street, Suite 101
                                        Newton, Massachusetts 02461
                                        (617) 723-1980
                                        *pete@horstmannlaw.com*

## CERTIFICATE OF SERVICE

I, Peter Charles Horstmann, Esquire, hereby certify that on this 23rd day of December, 2021, a copy of the foregoing motion was served electronically, upon Greg Friedholm, AUSA, Office of the United States Attorney, One Courthouse Way, Boston, MA 02110 and all counsel of record.

                                        _____
                                        Peter Charles Horstmann, Esquire

However, out of all this Court denial of the charged defendant Due Process of law rights — Mr. Rodriguez only seeks the re-u niting with closest family and devoted loved ones- For those reasons alone that's in accordance with the law Mr. Rodriguez prays that the honorable Court grant him bond with home monitoring along with the ankle bracelet - to where the Defendant would not be left to his own devices.

    For the above stated reasons Mr. Juan Rodriguez seeks the Hon. Judge's judicial discretion to grant him his relief sought to prevent a miscarriage of justice or in the alternative deems whatsoever the
Hon. Judge feels just and appropriate.

Respectfully Submitted

_____

Certificate of service

The charged defendant Mr. RDdriguez places in the mailbox here at the facility Donald Wyatt Detention facility to be mailed to the following:

Respectfully Submitted

_____